OPINION OF THE COURT
Bernard H. Jackson, J.
Upon the foregoing papers, this motion is decided as follows:
*71 This motion for an order setting aside a jury verdict against the above-named defendant is denied. This court finds that there are no grounds appearing in the moving papers which constitute legal basis for the motion (see, CPL 330.40 [2] [d] [i]). A trial court is authorized to set aside a verdict if a ground appears in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court (see, CPL 330.30 [1]). A Trial Judge is empowered to set aside a verdict of guilty, upon the law, based on a determination that a ruling or instruction of the court, duly protested by the defendant at a trial resulting in a judgment, deprived defendant of a fair trial; or that the trial evidence was not legally sufficient to establish the defendant’s guilt of an offense of which he was convicted (see, CPL 470.15 [4] [a], [b]).
STATEMENT OF FACTS
The motion is brought on the ground that the court erred in admitting into evidence a tape recording of two telephone conversations between a police 911 operator and a witness to a burglary in progress.
On Sunday July 12, 1987 at approximately 6:00 a.m., police communications received a 911 call from a witness to a burglary in progress at Alex and Henry’s Catering House located at 862 Cortland Avenue, Bronx County. The caller, who identified himself as "Henry” and gave a phone number, stated that he was observing the break-in from his apartment across the street. He described the perpetrators as one male black and one male white, wearing a blue t-shirt.
Within minutes, Police Officers Henderson and Rosado responded to a radio-run transmitted about a break-in at the restaurant. After Officers Henderson and Rosado observed nothing unusual, Police Officers Antonio Echevestre and James Fox arrived, pulled into the Exxon station adjacent to the restaurant and spotted a broken glass door with two males running out of it. Officers Henderson and Echevestre climbed over a 12-foot black metal gate and wall which separated the restaurant and the Exxon station, as the perpetrators ran up to the roof of the one-story restaurant. Officer Echevestre ascended a ladder leading to the roof while Officer Henderson remained below. Officer Echevestre came upon the male black, later identified as defendant, Michael Brown, hiding under *72 neath an air-conditioning duct located on the roof. Officer Echevestre told defendant to stand up and get off the roof. Defendant refused and a struggle ensued. Officer Echevestre shoved defendant off the roof and he fell on top of Officer Henderson. As defendant struggled with Officer Henderson, Officer Echevestre jumped down to help secure defendant with rear cuffs. Defendant was then placed face down in the middle of the yard between the black metal gate and the broken glass door.
Police communications received another call from "Henry” who indicated that one man had been caught but "the white guy [was still] on the roof.” The caller stated that police backup was needed to catch him. Officers Henderson and Echevestre went up to the roof to find the other perpetrator. Officer Henderson apprehended codefendant Robert O’Donald, who was wearing a blue t-shirt. He rear-cuffed him and then cuffed him to the black metal gate. Meanwhile Officer Echevestre noticed defendant’s disappearance from the yard. Officer Echevestre climbed down from the roof and asked about defendant’s whereabouts. Officers Echevestre and Henderson broke out the remaining glass in the broken door and went inside the restaurant to search for the defendant. New York Police Department Emergency Services was called in. Emergency Services broke the lock on the black metal gate, entered the premises and began to search. Officer Echevestre found Emergency Services with the defendant in the basement. Officer Echevestre brought the defendant outside to the marked patrol car where he observed no injuries to the defendant. Defendant and codefendant were then taken to the precinct.
"Henry” was an unavailable declarant at trial. During his call to the 911 operator he gave an unverifiable name and phone number. The police sent police officers to the only building he could have called from in an effort to locate him. They also called the number he gave, but "Henry” was never found.
At trial, the People moved to admit the taped telephone calls, placed by "Henry”, into evidence as a present sense impression exception to the hearsay rule. After defendant’s objection, the court admitted the tape which was then played for the jury. Defendant was subsequently convicted of burglary in the third degree, criminal mischief and resisting arrest on June 2, 1988.
*73 CONCLUSIONS OF LAW
The tape was properly received into evidence as a present sense impression exception to the hearsay rule, as provided for in the common-law rule articulated in McCormick on Evidence (3d ed 1984); as also cited in People v Luke (136 Misc 2d 733 [1987], affd 147 AD2d 990 [1st Dept 1989]); and as set forth in Federal Rules of Evidence, rule 803 (1) and Proposed NY Code of Evidence § 803 (1) (1980).
The present sense impression exception has long been accepted in other jurisdictions. (See, Evans v State, 547 So 2d 38 [1989]; People v Verburg, 170 Mich App 490, 430 NW2d 775 [1988], lv denied 442 NW2d 137 [1989]; State v Reid, 322 NC 309, 367 SE2d 672 [1988]; Hunt v State, 312 Md 494, 540 A2d 1125 [1988]; Stumpf v State, 749 P2d 880 [Alaska App 1988], cert denied 109 S Ct 2075 [1989]; State v Zinn, 106 NM 544, 746 P2d 650 [1987]; State v Comeau, 531 A2d 290 [Me 1987]; Booth v State, 306 Md 313, 508 A2d 976 [1986].)
The exception was first proposed by Harvard Law Professor Thayer in 1881 during his review of the "res gestae” case which encompasses statements of (1) present bodily condition, (2) present mental states and emotions, (3) excited utterances, and (4) present sense impressions. (See, Thayer, Bedingfield’s Case — Declarations as a Part of the Res Gesta, 15 Am L Rev 1 [1881].) He articulated it as statements made " 'near in time to that which they intend to prove’ ”, describing what was " 'then present or just gone by’ ” (Comment, The Present Sense Impression Exception to the Hearsay Rule: Federal Rule of Evidence 803 [1], 81 Dick L Rev 347, 350). The trustworthiness of such statements was based on their contemporaneous relationship with the event being described. Conversely, Dean Wigmore, who wrote considerably on the concept of res gestae, believed that only a startling event could produce a trustworthy statement. (See, 6 Wigmore, Evidence § 1747 [Chadborn rev 1976].) Presently, however, it is generally accepted that excitement impairs sensory perception and produces less accurate statements. Thus, present sense impressions are found to be more reliable than excited utterances. While New York has not expressly recognized the present sense impression exception by statute, it was suggested that it be adopted to complement the excited utterance and to avoid debate over whether a spontaneously described event was exciting or startling enough to be an excited utterance. (See, Proposed NY Code of Evidence, Commentary to § 803 [1980].)
The present sense impression exception to the hearsay rule *74 is defined as "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.” (Fed Rules Evid, rule 803 [1].) Present sense impression statements are considered reliable for several reasons: (1) they refer to observations being made at the time of the statement and are free from any defect of memory; (2) they are made contemporaneous with the observation and there is little or no time for calculated misstatement; (3) they are made to a third person who will probably have an opportunity to observe the situation and provide a check on the accuracy of the declarant’s statement; and (4) since the declarant will often be available for cross-examination his credibility will be subject to substantial verification before the trier of fact. (McCormick, Evidence § 298, at 860-861 [3d ed 1984]; People v Luke, supra.)
It should be noted that there is no requirement of corroboration under this hearsay exception and the Second Circuit has impliedly rejected such a requirement. (People v Luke, supra, at 738.) The United States Supreme Court has held that "[Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception.” (Ohio v Roberts, 488 US 56, 66 [1980].) In this case, a stronger argument is made for admission of the call because the testimony of the police officers corroborated the caller’s observations. They testified to arresting one male black and one male white with a blue t-shirt on the premises of Alex and Henry’s restaurant.
The caller gave a continuing account of a male black and male white, wearing a blue t-shirt, later identified by police as the defendant Mr. Brown and the codefendant Mr. O’Donald, entering the lot to Alex and Henry’s and climbing over a fence. The second call noted his observation of police arrival, the apprehension of the male white, and the need for more police to apprehend the defendant. Police Officers Rosado, Henderson, Echevestre and Fox, who all testified at trial, responded to a radio-run which was prompted by the calls to 911. Subsequent arrests of a male black, the defendant Mr. Brown, and a male white, the codefendant Mr. O’Donald, were made on the premises of Alex and Henry’s.
The caller’s statements are admissible, despite "Henry’s” anonymous identity. A declarant need not be identified by name (see, Note, The Present Sense Impression, 56 Tex L Rev 1053, 1063, n 53; 81 Dick L Rev 347, 357, n 105, op. cit.). Nor is there any requirement that the declarant be a participant, *75 because the present sense impression exception recognizes that a bystander may be moved by what he perceives. (United States v Medico, 557 F2d 309 [2d Cir 1977], cert denied 434 US 986 [1977].) All that is required is that the declarant have firsthand knowledge of the event or condition, as this caller did.
Even if allowing the admission of the tape and failing to instruct the jury on its use was error, it was harmless error and does not provide grounds for setting aside the verdict of guilty, in view of the overwhelming evidence of defendant’s guilt (People v Parsons, 150 AD2d 614 [1989], Iv denied 74 NY2d 850 [1989]; People v Green, 121 AD2d 739 [1986], lv denied 68 NY2d 813 [1986]).
Thus, this motion for an order setting aside the verdict of guilty against Michael Brown is denied. Accordingly, defendant’s request for a new trial is also denied.